UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CATHY M. JACKSON                                    CIVIL ACTION

v.                                                  NO. 19-9983

JOHNSON & JOHNSON
and JOHNSON & JOHNSON
CONSUMER COMPANIES, INC.                            SECTION "F"


ORDER AND REASONS

Before the Court is the plaintiff's emergency motion to remand. For the reasons that follow, the motion is GRANTED.

**Background**

This lawsuit is one of roughly 2,400 personal injury and wrongful death actions attributing the use of Johnson & Johnson's talcum powder products to the development of cancer.

Cathy Jackson began using Johnson & Johnson's Baby Powder and Shower to Shower products in 1968 to powder her perineal area. She ceased using the products in April of 2017 when she was diagnosed with ovarian cancer. The following year, on March 19, 2018, Ms. Jackson brought a products liability action in Orleans Parish Civil District Court against Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. (collectively, "J&J"); Imerys Talc America, Inc., J&J's talc supplier; and K&B Louisiana Corporation, the owner of the drugstore at which she regularly

1

purchased the offending products.  Alleging that the defendants were on notice of, yet failed to warn about, the dangers associated with talcum powder use, Ms. Jackson's petition asserts various state law causes of action and seeks to recover punitive damages.

Meanwhile, on February 13, 2019, Imerys Talc America, J&J's talc powder supplier, filed for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the District of Delaware.  This filing automatically stayed the prosecution of all pending talc-related claims against Imerys.  Two months later, J&J began to remove talc-related state court claims filed against it across the country, pursuant to 28 U.S.C. § 1452(a), on the ground that they are "related to" the Imerys bankruptcy proceeding and that federal courts therefore have jurisdiction under 28 U.S.C. § 1334.  In addition, on April 18, 2019, J&J filed a Motion to Fix Venue with the United States District Court for the District of Delaware, seeking the transfer of all talc-related state and federal actions to Delaware for resolution, pursuant to 28 U.S.C. § 157(b)(5). Twelve days later, on April 30, 2019, J&J filed an Emergency Motion for Provisional Transfer Under 28 U.S.C. § 157(b)(5), urging the Delaware Court to provisionally transfer all personal injury and wrongful death talc claims against J&J, prior to ruling on J&J's Motion to Fix Venue.

The following day, on May 1, 2019, J&J removed Jackson's state court talc claims asserted against it, invoking this Court's

jurisdiction under §§ 1452(a) and 1334(b).[1] As grounds for removal, J&J submits that the Imerys bankruptcy proceeding gives rise to "related to" jurisdiction because (1) supply agreements between J&J and Imerys provide for contractual indemnification; (2) J&J shares insurance with the debtor; and (3) there is an identity of interest between J&J and Imerys with respect to the state court claims. On May 9, 2019, Judge Noreika of the District of Delaware denied J&J's Emergency Motion for Provisional Transfer. <u>See</u> <u>In re Imerys Talc America, Inc.</u>, BR No. 19-10289-LSS, 2019 WL 2052351 (D. Del. May 9, 2019). Judge Noreika determined that J&J had not demonstrated the need for immediate, ex parte relief and that there would be no prejudice to deciding J&J's Motion to Fix Venue "in due course." <u>Id.</u> at *3.[2]

Jackson now moves to remand on the following grounds: (1) removal was untimely; (2) the removed claims are not sufficiently related to Imerys' bankruptcy proceeding to confer federal subject

---

[1] It is clear from J&J's submissions that it only intended to remove to federal court the claims asserted against it. Indeed, J&J asserts in its Notice of Removal that it does not seek to remove "any claims against other parties." J&J further clarifies in its Notice of Compliance:
    Other Defendants remain in the State Court action (namely, K&B Louisiana Corporation and Imerys Talc America, which has instituted Chapter 11 Bankruptcy proceedings), as only the claims against the Johnson & Johnson Defendants have been removed to this Court.

[2] As of the date of this Order and Reasons, a decision had not been rendered on J&J's venue motion, which was fully briefed by May 23, 2019.

3

matter jurisdiction; and (3) even if this Court has jurisdiction, this is a proper case for either mandatory abstention or equitable remand. In response, J&J urges the Court to either deny or defer ruling on the motion to remand until the District Court of Delaware rules on the pending Motion to Fix Venue. J&J hopes that the Delaware District Court will find the state personal injury and wrongful death claims against it sufficiently related to Imerys' bankruptcy proceeding in that District and therefore fix venue in Delaware for all such actions.[3]

I.

A.

Federal courts are courts of limited jurisdiction, possessing only the authority granted by the United States Constitution and conferred by the United States Congress. Energy Mgmt. Services, LLC v. City of Alexandria, 739 F.3d 255, 257 (5th Cir. 2014) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). As such, "[i]t is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Id. It is

---

[3] It is unclear from the parties' submissions as to whether Ms. Jackson has died. In the motion to remand, plaintiff's counsel states that Ms. Jackson "has been a life-long resident of Orleans Parish (although she is deceased now)" and that her "family members [are] located in Louisiana and Orleans Parish." This is the sole reference to Ms. Jackson's death in the 25-page memorandum in support of her motion to remand.

also well-established that the "statutory procedures for removal are to be strictly construed" and that "any doubt as to the propriety of removal should be resolved in favor of remand." Energy Mgmt. Services, Inc., 739 F.3d at 257; Gutierrez v. Flores, 543 F.3d 248, 251 (5th Cir. 2008) (internal quotations omitted).

B.

Section 1452(a) of the Bankruptcy Code provides that "[a] party may remove any claim or cause of action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Section 1334(b), in turn, states that district courts "have original but not excusive jurisdiction of all civil proceedings . . . related to cases under title 11." 28 U.S.C. § 1334(b).

To determine whether a case is "related to" a bankruptcy proceeding, the Fifth Circuit allies with the test set forth by the Third Circuit in Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984). See In re Wood, 825 F.2d 90, 93 (5th Cir. 1987).

The Pacor test provides:

The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and

5

> which in any way impacts upon the handling and administration of the bankrupt estate.
>
> On the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of [§ 1334]. Judicial economy itself does not justify federal jurisdiction . . . .

Pacor, 743 F.2d at 994 (citations omitted) (emphasis in original).

C.

Moreover, "[h]aving jurisdiction does not necessarily require its exercise." See In re Friede Goldman Halter, Inc., No. 19-1003, 2019 WL 2487639, at *4 (Bankr. M.D. La. June 10, 2019). Section 1452(b) of the Bankruptcy Code governs motions to remand filed after removal. See 28 U.S.C. § 1452(b). Under § 1452(b), "[t]he court to which such claim or cause of action is removed *may* remand such claim or cause of action *on any equitable ground*." Id. (emphasis added). The statute further provides that a remand order entered under § 1452(b) "is not reviewable by appeal or otherwise." 28 U.S.C. § 1452(b). Therefore, "once a matter related to a bankruptcy case is equitably remanded, it is not subject to federal appellate review on any basis." Arnold v. Garlock, 278 F.3d 426, 438 (5th Cir. 2001).

In determining whether equitable remand is appropriate, the following considerations are relevant: (1) forum *non conveniens*; (2) whether the action has been bifurcated by removal; (3) whether a state court is better able to respond to questions involving

6

state law; (4) expertise of a particular court; (5) duplicative and uneconomic effort of judicial resources in two forums; (6) prejudice to the involuntarily removed parties; (7) comity; and (8) a lessened possibility of an inconsistent result. Browning v. Navarro, 743 F.2d 1069, 1076 n.21 (5th Cir. 1984).[4] Because the Court is vested with "broad discretion to grant or deny a motion to remand on any equitable ground," any one of the relevant factors may provide a sufficient basis for equitable remand. See id.

*D.*

Finally, with respect to venue, § 157(b)(5) provides that "personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." 28 U.S.C. § 157(b)(5). The Supreme Court has held that this provision "is not jurisdictional." Stern v. Marshall, 564 U.S. 462, 464 (2011). To the contrary,

> this unusual, perhaps unique, provision empowers a court other than that in which the litigation is pending to decide where the trial is to take place. The court in which the title 11 case is pending has the options of trying the case itself or directing that the trial occur in the district court for the district in which the claim arose.

Collier on Bankruptcy ¶ 3.06 (16th ed. 2019).

---

[4] In Browning, the Fifth Circuit interpreted 28 U.S.C. § 1478(b), which has since been slightly amended and reenacted as § 1452.

II.

*A.*

In this case, Jackson and J&J quarrel over whether J&J's claims are "related to" the Imerys bankruptcy proceeding, such that this Court has subject matter jurisdiction. J&J contends that there is "related to" jurisdiction over J&J's claims based on indemnification agreements and shared insurance between J&J and Imerys, and because there is an "identity of interest" between J&J and the debtor. The plaintiff counters that jurisdiction is lacking because the indemnification agreements and shared insurance are not automatically triggered by the filing of these claims. Because another lawsuit would be required in order for these claims to affect the bankruptcy estate, Jackson submits that any hypothetical connection is too remote to support jurisdiction. Although it appears to the Court that Jackson's claims against J&J could conceivably affect the Imerys bankruptcy estate, the Court need not conclusively decide this issue. Even assuming that the Court has subject matter jurisdiction over this matter, the Court finds that the equities weigh in favor of remand under § 1452(b).

*B.*

While the Court may remand claims that are related to a bankruptcy proceeding on "any equitable ground," several equitable considerations support remand here. See 28 U.S.C. § 1452(b). First, with respect to state law predomination and comity, the

talc claims asserted against J&J involve only questions of state law, specifically, state law product liability claims related to asbestos. Another consideration, prejudice to the involuntarily removed party (here, the plaintiff) also heavily favors remand. Ms. Jackson filed this case over a year ago, and discovery is underway. To now remove this case to federal court would impose significant disruption on Ms. Jackson (or her heirs, if she has died) and delay resolution of her claims by months or potentially years. Relatedly, the interest of judicial economy supports remand because the state court has already considered these state law claims for over one year – including during a hearing on the defendants' declinatory exceptions on October 19, 2018. The re-litigation of plaintiff's Louisiana-based claims in federal court would needlessly duplicate judicial resources that have already been committed to this case.

Moreover, to the extent J&J argues that the efficient administration of the bankruptcy estate and the degree of relatedness of these claims to the bankruptcy case weigh against remand, the Court finds that the connection to the bankruptcy proceedings is not sufficiently strong as to outweigh the equitable considerations supporting remand. Notably, J&J has consistently represented in disclosures and discovery responses in other, similar talc-related cases that the Imerys indemnification and insurance agreements were "unlikely to be implicated" in those

9

cases. See In re Johnson & Johnson (State Court Talc Actions), 2019 U.S. Dist. LEXIS 95445, at *18 (S.D.N.Y. June 4, 2019). And while remand may frustrate J&J's efforts to consolidate state court actions from across the country in a single forum for its own convenience, the Court is not persuaded that J&J would suffer any actual prejudice as a result of remand. Indeed, if J&J wants to seek indemnification from Imerys, it can still do so by asserting claims in the bankruptcy proceeding.[5]

Finally, the Court emphasizes that a remand order by this Court has no impact on the Delaware District Court's ultimate decision on the Motion to Fix Venue. If Judge Noreika decides to grant J&J's motion, the claims will be transferred, even if they have been remanded to state court. In other words, although the Delaware District Court has the authority to determine venue, this authority does not preclude this Court from addressing the propriety of the removal of this case. Therefore, the Court finds that the possibility that this case may be transferred to Delaware at some undefined time justifies neither the denial of plaintiff's motion to remand, nor deferring ruling on the motion.

---

[5] See Kleiner v. Rite Aid Corporation, No. 19-1700, 2019 WL 2462967, at *7 (E.D. Penn. June 11, 2019) ("Johnson & Johnson has candidly described its strategy of centralizing these cases in the District of Delaware. To the extent such a strategy circumvents the rules and processes governing Multi-District Litigation is a question best resolved, if at all, by Judge Noreika in the first instance.").

Accordingly, for the foregoing reasons, IT IS ORDERED: that the plaintiff's motion to remand is GRANTED. Because equitable considerations favor remand pursuant to § 1452(b), this matter is hereby REMANDED to the Civil District Court for the Parish of Orleans.[6]

New Orleans, Louisiana, June 20, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[6] Ms. Jackson raises several other grounds for remand, including untimeliness of removal and mandatory abstention. Because the Court finds remand appropriate based on equitable grounds under 28 U.S.C. § 1452(b), the Court does not address Ms. Jackson's remaining bases for remand.